UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. |
| | : | 3:21-CR-183 (JCH) |
| | : | |
| v. | : | |
| | : | |
| LANDDY RODRIGUEZ et al., | : | NOVEMBER 29, 2022 |
| Defendants. | : | |
| | : | |

**RULING ON MOTION TO SUPPRESS WIRETAP EVIDENCE (DOC. NO. 225)**

**I.     INTRODUCTION**

Defendants Landdy Rodriguez ("Rodriguez"), Luis Cepeda ("Cepeda"), Reinaldo Colon Oliveras ("Colon Oliveras"), Hector Esquilin Cordero ("Cordero"), Thomas Marra ("Marra"), and Ramon Oquendo ("Oquendo")[1] have moved to suppress evidence acquired from wiretaps pursuant to the Fourth and Fifth Amendments to the U.S. Constitution and section 2518 of title 18 of the U.S. Code.  See Rodriguez's Motion to Suppress Title III Wiretap Evidence ("Mot. to Suppress") (Doc. No. 225); Oquendo's Motion to Suppress Title III Wiretap Evidence (Doc. No. 254); Minute Entry for Proceeding Held on November 7, 2022 (Doc. No. 257).  The defendants argue that law enforcement's affidavits were insufficient to justify authorization of a wiretap, and that the evidence resulting from the intercepts must be suppressed.  See Memorandum in Support of Motion to Suppress ("Defs.' Mem.") at 6 (Doc. No. 225–1).  The government opposes the Motion.  See Government's Memorandum in Opposition to Defendants'

---

[1] These are six of the ten defendants indicted in this case.  See Indictment ¶¶ 1–2 (Doc. No. 18).

Motion to Suppress ("Mem. in Opp.") (Doc. No. 255).  For the following reasons, defendants' Motion is **denied**.

## II. BACKGROUND

Starting in or around November 2020, the Connecticut State Police's Statewide Narcotics Task Force ("SNTF") began investigating an alleged drug trafficking organization.  See, e.g., Mem. in Opp. at 2; Exhibit A, May Affidavit ("May Aff.") at ¶ 11 (Doc. No. 256-1, Filed Under Seal).  For months, the SNTF engaged confidential informants to elicit information about, and conduct controlled purchases of cocaine from, a drug operation allegedly run by Rodriguez and his father.  See, e.g., Mem. in Opp. at 2; May Aff. at ¶¶ 12–13, 22, 39–41, 67–69.  This and other investigative efforts led the SNTF to seek a wiretap from Connecticut Superior Court on June 4, 2021.  See, e.g., Mem. in Opp. at 3; Exhibit A, June 4, 2021 Order of State Wiretap Panel ("6/4/21 State Order") (Doc. No. 256-1, Filed Under Seal).  The Application included an Affidavit from two members of the SNTF delineating their investigative efforts thus far as well as law enforcement's need for the more intrusive measure.  May Aff. at ¶¶ 10–102, 103–107.  The Superior Court's three-judge panel authorized the wiretap, and the interception of wire and electronic communications began on June 7, 2021.  See Defs.' Mem. at 2; Mem in Opp. at 3.  The wiretap was later renewed—based on a new Affidavit laying out the need for an additional period of interception, see Exhibit B, June Affidavit ¶¶ 37–55 (Doc. No. 256-2, Filed Under Seal)—to extend through July 7, 2021.  See Defs.' Mem. at 2; Mem in Opp. at 3.

Despite investigators' claims that the wiretap yielded significant information and leads, see Exhibit C, August Affidavit ("Aug. Aff.") ¶¶ 55–111 (Doc. No. 256-3, Filed

Under Seal), it expired with additional renewals still available, see Defs. Mem. at 4. The first federal wiretap—issued pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510, et seq.—was authorized on August 2, 2021, by Chief Judge Stefan R. Underhill of the District of Connecticut. See Defs. Mem. at 2; Mem. in Opp. at 5; Exhibit C, Order Authorizing Wiretap on August 2, 2021 (Doc. No. 256-3, Filed Under Seal). Much like the initial Application submitted in state court, the federal request included an Affidavit detailing other investigative procedures that failed or were likely to fail. See Aug. Aff. ¶¶ 127–148.

Based on the information obtained from the federal wiretap and representations regarding the need for further intercepts, see Exhibit D, September Affidavit ("Sept. Aff.") ¶¶ 38–200 (Doc. No. 256-4, Filed Under Seal), investigators sought a 30-day renewal. See Mem. in Opp. at 7; Exhibit D, Application for Continued Interception on September 3, 2021 (Doc. No. 256-4, Filed Under Seal). As part of their Application, investigators included an Affidavit specifically laying out the reasons why a renewal of the wiretap was necessary. See Sept. Aff. ¶¶ 201–223. After reviewing the government's renewal request, Chief Judge Underhill authorized the continued intercepts. See Mem. in. Opp. at 7; Exhibit D, Order Authorizing Wiretap on September 3, 2021 (Doc. No. 256-4, Filed Under Seal).

Investigators pursued a final 30-day renewal of the wiretap in October 2021. See Mem. in Opp. at 8; Exhibit E, Application for Continued Interception on October 1, 2021 (Doc. No. 256-5, Filed Under Seal). The Application again included an Affidavit articulating the need for the intercepts, see Mem. in Opp. at 8; Exhibit E, October Affidavit ("Oct. Aff.") ¶¶ 121–143 (Doc. No. 256-5, Filed Under Seal), and Chief Judge

Underhill authorized the wiretap once more, see Mem. in. Opp. at 8; Exhibit E, Order Authorizing Wiretap on October 1, 2021 ("10/1/21 Order") (Doc. No. 256-5, Filed Under Seal).

An indictment was returned in early November 2021, charging the defendants with one count of conspiracy to distribute and to possess with intent to distribute cocaine. See Indictment ¶¶ 1–2. Rodriguez was also charged with a count of possession with intent to distribute cocaine. See id. ¶ 6. The court now considers defendants' Motion to Suppress Title III Wiretap Evidence, see Mot. to Suppress; Oquendo's Motion to Suppress Title III Wiretap Evidence, which the government opposes, see Mem. in Opp.[2]

## III.     LEGAL STANDARD

Title III governs the procedure for obtaining a wiretap and requires that an application include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." 18 U.S.C. § 2518(1)(c). By demanding that law enforcement detail the actual failures or likely pitfalls of normal investigative procedures, Congress "struck a balance between the needs of law enforcement officials and the privacy rights of the individual." United States v. Concepcion, 579 F.3d 214, 218 (2d Cir. 2009) (quotation, brackets, and citation omitted). Indeed, Title III reflects Congress' intent "that wiretapping is not resorted to in

---

[2] Neither party requested an evidentiary hearing. Upon review of the pleadings, the court discerns no reason why one would be necessary. Thus, the hearing currently scheduled for 11:00 AM on December 6, 2022, see ECF No. 262, has been cancelled.

situations where traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 415 U.S. 143, 153 n.12 (1974). As such, the question "is not whether a wiretap provides the simplest, most efficient means of conducting an investigation; telephonic surveillance may only be used when it is necessary to assist in law enforcement." Concepcion, 579 F.3d at 218.

Still, Title III does not demand "that any particular investigative procedures must be exhausted before a wiretap may be authorized." United States v. Miller, 116 F.3d 641, 663 (2d Cir. 1997) (quotation, brackets, and citation omitted). Nor does it "preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents. . . ." United States v. Vazquez, 605 F.2d 1269, 1282 (2d Cir. 1979) (quotation and citation omitted). Instead, the necessity requirement only mandates "that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." Concepcion, 579 F.3d at 218 (quotation and citation omitted).

Moreover, the necessity requirement is to be approached in a "practical and commonsense fashion." Id. (quotation and citation omitted). In applying the commonsense approach, the Second Circuit has "approved of wiretaps in complex and sprawling criminal cases involving large conspiracies" in addition to "cases with peculiar circumstances that made traditional investigative techniques difficult. . . ." Id. In the end, a wiretap affidavit will be considered adequate as long as it "provides some basis for concluding, in a practical and commonsense fashion, that less intrusive investigative

procedures are not feasible." United States v. Gee, 2013 WL 2641346, at *1 (D. Conn. June 12, 2013) (citing United States v. Lilla, 699 F.2d 99, 103 (2d Cir. 1983)).

As a reviewing authority, the court must "grant considerable deference to the district court's decision whether to allow a wiretap, ensuring only that 'the facts set forth in the application were minimally adequate to support the determination that was made.'" Concepcion, 579 F.3d at 217 (quoting Miller, 116 F.3d at 663).

## IV.   DISCUSSION

Despite the "considerable deference" this court must grant to the decision to authorize the interception of wire and electronic communications, defendants argue that law enforcement's affidavits in support of their applications for a wiretap "failed to meet their burden to show other investigative means were unsuccessful." Defs.' Mem. at 2. In advancing this position, the defendants focus on the initial state wiretap authorization as well as the initial federal wiretap authorization. Id. at 2–4 (discussion of the state wiretap), 4–6 (discussion of the federal wiretap).

### A.   State Wiretap Authorization

Connecticut law mirrors Title III in requiring that a law enforcement affidavit in support of a wiretap include "a full and complete statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ. . . ." Conn. Gen. Stat. § 54-41c(6).  Given the similarities in language with the federal statute, the Connecticut Supreme Court has interpreted the statutory requirement of section 54-41c(6) using federal precedent. See generally State v. Telesca, 199 Conn. 591, 598–600 (1986) (relying solely on federal precedent to

examine section 54-41c(6)).  Indeed, the defendants concede that Connecticut imposes "essentially identical requirements for state authorized wiretaps. . . ."  Defs.' Mem. at 1.  Thus, this court concludes that the necessity finding by the state's three-judge panel is subject to the same "considerable deference" as would a district court order authorizing a wiretap pursuant to Title III.[3]  Concepcion, 579 F.3d at 217; see Miller, 116 F.3d at 661 (noting that the interpretive dicta in a prior Second Circuit case "suggesting a state's more stringent statutory requirements might be applied in a federal prosecution if those requirements were more substantive than procedural[ ] ha[s] never been applied to bar the introduction of wiretap evidence."); United States v. Amanuel, 615 F.3d 117, 122 (2d Cir. 2010) ("[F]ederal law governs the use of a state-issued eavesdropping warrant.").

In attacking the sufficiency of the first Affidavit submitted in support of the state wiretap, the defendants argue that law enforcement rushed to initiate the intercepts before "other normal investigative procedures" had failed.  See Defs.' Mem. at 2–3.  In particular, the defendants note the progress made in the approximately six months since the investigation began.  See id.  However, the early success of the SNTF in identifying members of the conspiracy and key organizational locations is not enough to render a wiretap unnecessary.  Instead, the court's inquiry focuses on the same subject the first state Affidavit addresses: the breadth of the investigation thus far and why "normal investigative procedures" failed or are likely to fail.  See May Aff. ¶¶ 10–102,

---

[3] The defendants do not argue that the court should apply state law.  Indeed, the only case the defendants cite in their entire Motion to Suppress is a federal case applying federal law.  See Defs.' Mem. at 1; United States v. Moran, 349 F. Supp. 2d 425, 456–57 (N.D.N.Y. 2005).

7

103–07.  The affiants discuss the failures or likely shortcomings of executing search warrants, see id. ¶ 103a; conducting additional surveillance, see id. ¶ 103b; using an undercover officer, see id. ¶ 103c; initiating arrests, see id. ¶ 104; and relying on the further use of confidential informants, see id. ¶¶ 105–06.  Without a wiretap, the affiants conclude, investigators will be unable to uncover the scope of the enterprise, the distribution network, and other information critical to maintaining a criminal prosecution.  See id. ¶ 107.  This court concludes that these statements are certainly "minimally adequate" to support the three-judge panel's finding that the wiretap was necessary.  Concepcion, 579 F.3d at 217.

      B.    <u>Federal Wiretap Authorization</u>

As to the first federal wiretap authorized on August 2, 2021, the defendants challenge the sufficiency of the supporting Affidavit in a litany of ways.  See Defs.' Mem. at 4.  First, the defendants take issue with the first federal Affidavit's articulation of a "non-exhaustive list of investigative procedures" that have failed, reasonably appear to be unsuccessful if implemented, or are too dangerous to undertake.  See Aug. Aff. ¶ 129.  They aver that this contravenes Title III's requirement that investigating officers provide a "full and complete" statement.  18 U.S.C. § 2518(1)(c); Defs.' Mem. at 4.  However, the affiant's characterization of the list is not more important than whether the list itself satisfies the statutory requirement that law enforcement inform the authorizing judge of "the nature and progress of the investigation" as well as "the difficulties inherent in the use of normal law enforcement methods."  Concepcion, 579 F.3d at 218.

Despite the affiant's word choice, the court has no difficulty in determining that the standard is met here.  The special agent discussed the failures of, or shortcomings

attendant to, various investigatory methods, including the use of pen registers and toll records, see Aug. Aff. ¶ 134; physical and electronic surveillance, see id. ¶ 135; a financial investigation, see id. ¶ 136; a grand jury, see id. ¶¶ 137–139; confidential informants, see id. ¶ 140; undercover agents and officers, see id. ¶¶ 141–142; cooperation agreements, see id. ¶ 143; search warrants, see id. ¶¶ 144–146; and immediately arresting suspects, see id. ¶ 147.  Moreover, subsequent federal affidavits laid out why further intercepts were necessary: to facilitate the interdiction of drug parcels necessary to support the prosecution of the highest levels of the operation.  See Sept. Aff. ¶ 203; Oct. Aff. ¶ 123.  Thus, the affiant's description of the list of investigatory methods is insufficient to undermine the substance he provided.

      Second, the defendants take issue with investigators citing the successes of the state wiretap after failing to renew it the maximum number of times allowable under Connecticut law.  See Defs.' Mem. at 4; Conn. Gen. Stat. § 54–41(g).  In particular, the defendants assert that referencing the expired state wiretap as a means of meeting the "federal exhaustion" requirement was "a form of bootstrapping."  Defs.' Mem. at 4.  However, this argument wholly misunderstands what the statute demands.  As previously noted, Title III does not require "that any particular investigative procedures . . . be exhausted before a wiretap may be authorized."  Miller, 116 F.3d at 663.  Accordingly, the government need not have shown that a state wiretap, in particular, had been tried and resulted in limited success in order to substantiate the necessity of the federal wiretap.  Instead, the affidavit's discussion of the state wiretap merely ensures that investigators provided a "full and complete" statement of "the nature and progress of the investigation. . . ."  Concepcion, 579 F.3d at 218.

Third, the defendants' argument that the explanation in the first federal Affidavit of why certain investigative methods failed or are likely to fail is unpersuasive. See Defs. Mem. at 5. Specifically, defendants criticize the Affidavit's discussion of pen registers, confidential sources, undercover officers, and cooperating or grand jury witnesses. Id.

        1.      Pen Registers

The first federal Affidavit posits that law enforcement made extensive use of telephone toll records and pen registers, but that this investigatory tool resulted in limited success as it is incapable of revealing the participants of a conversation, the nature and subject of the discussion, and the scope of each person's role in the organization. See Aug. Aff. ¶ 134. The defendants argue that this assertion disregarded that law enforcement had ascertained the identity of many of the co-conspirators through other investigatory means and that a confidential source had spoken with Rodriguez over the phone to arrange multiple drug transactions. See Defs.' Mem. at 5. Yet, the fact that pen registers and other investigatory tools had helped identify members of the organization does not undercut any of the affiant's stated reasons why these efforts resulted in limited success. Knowing a member's identity is very different from understanding that person's role in day-to-day operations and in the larger organization. Moreover, the ability to monitor drug transactions with Rodriguez is useful in gathering evidence of his involvement, but it provides little insight into the larger conspiracy. That is part of the reason why the Second Circuit has affirmed the need for wiretaps in "complex and sprawling criminal cases involving large conspiracies. . . ." Concepcion, 579 F.3d at 218.

### 2. Confidential Sources

The defendants argue that, despite quickly developing two confidential sources, investigators did not use additional sources. See Defs. Mem. at 5. The first federal Affidavit, however, makes clear why the two sources were of limited or no utility going forward as well as why it would be difficult to develop any sources within the organization. See Aug. Aff. ¶ 140(e)–(f). These reasons are sufficient to explain why the use of confidential sources were insufficient to advance the investigation.

### 3. Undercover Officers

As the first federal Affidavit notes, investigators opted against using an undercover agent due to the potential dangers to the officer. See Aug. Aff. ¶ 141. The defendants maintain that the affiant's claim is too generic and that it fails to provide any examples of prior instances of violence by the organization. See Defs.' Mem. at 5. The Second Circuit, however, has "often" recognized that firearms are "tools of the trade" for substantial drug traffickers. United States v. Crespo, 834 F.2d 267, 271 (2d Cir. 1987); see also United States v. Delva, 858 F.3d 135, 155 (2d Cir. 2017) ("Drug trafficking is plainly a serious crime, one often accompanied by violence. . . ."). Given the investigation's discovery that significant quantities of cocaine and fentanyl were being trafficked by the organization, see Aug. Aff. ¶¶ 32–116, the affiant's conclusion is rooted in the facts of the case. Moreover, the defendants' argument overlooks the other reason offered for not embedding an undercover agent: it was unlikely to succeed. See id. ¶¶ 141–142. The affiant's well-reasoned conclusion is grounded in his knowledge of the operation and provides an adequate basis to conclude that such an effort was likely to fail.

        4.        Cooperating or Grand Jury Witnesses

Lastly, the defendants take issue with law enforcement's decision not to use cooperating or grand jury witnesses. See Defs. Mem. at 5. Again, the defendants aver that the reasons given in the first federal Affidavit, see Aug. Aff. ¶¶ 137–139, 143, were broadly applicable and unspecific to the case, see Defs.' Mem. at 5. The court disagrees. The reasons offered in the Affidavit are grounded in the dynamics and observed characteristics of the operation, including the tight-knit structure of the organization that makes cooperation unlikely as well as the siloed nature of the operation that prevents low-level participants from possessing the knowledge necessary to expose the scope of the conspiracy. See Aug. Aff. ¶143. Such statements are more than "minimally adequate" to support the determination that a wiretap was necessary. See, e.g., United States v. Rivera-Ortiz, 2014 WL 6085387, at *3 (D. Conn. Nov. 13, 2014).

### V.    CONCLUSION

The government's wiretap applications clearly established a basis for the state's three-judge reviewing panel as well as Chief Judge Underhill to conclude that a wiretap was necessary. Thus, the Motion to Suppress Title III Wiretap Evidence (Doc. No. 225) brought by Rodriguez, Cepeda, Colon Oliveras, Cordero, and Marra, is **denied**. Oquendo's Motion to Suppress Title III Wiretap Evidence (Doc. No. 254), which seeks suppression of the same material and requests to join in the Motion originally filed by Rodriguez, is also **denied**.

**SO ORDERED.**

Dated this 29th day of November, 2022, at New Haven, Connecticut.

      /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge